## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

LEON FRENKEL, ET AL.,

      Plaintiffs,                Case No.:  0:11-CV-62422-JIC

v.

JOHN P. ACUNTO, ET AL.,

      Defendants.

_____/

### AFFIDAVIT OF JONATHAN BLOOM IN RESPONSE TO AFFIDAVIT OF ATTORNEY'S FEES AND COSTS

BEFORE ME, the undersigned authority, personally appeared JONATHAN BLOOM, ESQ., being first duly sworn, deposes and says:

1.     My name is JONATHAN BLOOM and I am the attorney for Defendant, John P. Acunto ("Acunto"), in the above-styled matter.  I am over the age of 18 and have personal knowledge of the facts and circumstances set forth in this Affidavit.

2.     I was the Escrow Agent under a Settlement Agreement entered into by Acunto and Plaintiffs, Leon Frenkel ("Frenkel") and Periscope Partners, P.P. (collectively, the "Plaintiffs").  A copy of the Settlement Agreement is attached hereto as Exhibit "A."

3.     Under paragraph 11 of the Settlement Agreement, the parties agreed that documents responsive to a Subpoena Duces Tecum that had been served on Citibank would be produced by Citibank, and held by me in trust.  In the event the Settlement Agreement was breached by Acunto, then the documents were to be released from escrow and forwarded to Plaintiffs' counsel, Mark D. Kushner, Esq.

Case No.:  0:11-CV-62422-JIC

4.      I have no personal recollection of ever having received the Citibank documents, and my previous paralegal who would have been the person to file any documents received is no longer with my firm.

5.      Since Mr. Acunto apparently breached the Settlement Agreement in failing to pay the amounts due, Mr. Kushner demanded that I release the Citibank documents from escrow and immediately forward them to him.

6.      Due to the fact that I am not simply an uninterested "escrow agent" but also counsel to Acunto with the attendant fiduciary duties, I initially advised Mr. Kushner that since Mr. Acunto, objected to my release of the documents unless a Court Order was provided.

7.      Even though Mr. Acunto objected to the release of the Citibank documents, I instructed my litigation paralegal, Susan Roy, to start gathering the Citibank documents in order to bate stamp such documents.  At such time, I was advised by my office staff that despite a thorough investigation in my office, we could not find them anywhere.

8.      I immediately advised Mr. Kushner that I was unable to locate the Citibank documents in my office, but that I would not object to him issuing and serving a new Subpoena on Citibank.

9.      Rather than doing so, however, Mr. Kushner asked that we reach out to Citibank and try to get the documents produced again, without the necessity of serving a new subpoena.

10.     It literally took months to even get a response from Citibank.  Mr. Kushner would periodically reach out to me or my paralegal by e-mail or telephone to find out the status of the documents, and I or my paralegal advised that Citibank was being unresponsive.  At the time, Mr. Kushner was cooperative, and seemed to be willing for us to continue to reach out to

Citibank, with the hopes that they would produce the documents.  *See* sample of e-mail strings attached hereto as Composite Exhibit "B."

11.     When it became clear that Citibank was not going to cooperate voluntarily, Mr. Kushner, rather than simply serving a new Subpoena on Citibank, or even asking me to do so, chose a much longer, more difficult, and substantially more expensive path:  Mr. Kushner filed a 13-page Motion to Enforce Settlement Agreement and Motion to Compel Release of Citibank Documents (the "Motion to Compel") [DE 139].

12.     The Motion to Compel, among other things, requested the Court to compel me "to forthwith release the Citibank Documents" and, absent timely compliance, order me "to appear before the Court to explain the circumstances surrounding [my] . . . failure to comply."

13.     In essence, Mr. Kushner was seeking an Order from the Court directing me to produce documents he already knew I could not locate and did not have.

14.     In the Response to the Motion to Compel [DE 141], I advised that I had been attempting to reach out to Citibank to try to obtain a copy of the documents, that Citibank was being unresponsive, that I would not object to Plaintiffs trying to obtain the documents directly from Citibank, and that I would immediately produce the documents if and when I was able to obtain and/or locate them.

15.     Simultaneously with my filing the Response to the Motion to Compel, I filed a Motion for Leave to Withdraw as Attorney for John P. Acunto (the "Motion to Withdraw") [DE 140].

16.     In the Motion to Withdraw, I explained that irreconcilable differences had arisen between me and Acunto, that I had been unable to reach him by e-mail or telephone, and that Acunto owed me more than $24,000.00 in legal fees.  I also stated that I was unable to locate the

Case No.:  0:11-CV-62422-JIC

Citibank documents, but that I would raise no objection to Plaintiffs' efforts to obtain the documents directly from Citibank.

17.      Importantly, the first time Mr. Kushner asked the Court to order me to "bear the costs related to Plaintiff's efforts" to obtain the Citibank documents, and to "be responsible for all damages suffered by Plaintiffs arising from" my failure to safeguard the documents, including attorney's fees, was in his Reply [to my Response] as to Motion to Enforce Settlement Agreement and Motion to Compel Release of Citibank Documents and Request for Hearing [DE 146].

18.      Thereafter, we appeared in Court and the Court directed Mr. Kushner to file an Affidavit of Non-Payment [DE 153] and an Attorney Fee Affidavit [DE 154].

19.      In his Attorney Fee Affidavit, Mr. Kushner indicates a total of 27.70 hours of attorney time at a rate of $275.00 an hour related to the attempts made to obtain the Citibank documents, for a total attorney's fee amount of $7,507.50, plus **costs of $35.00 related to service of the replacement Citibank Subpoena.**  Attached to the Affidavit as an Exhibit is Mr. Kushner's timesheet.

20.      In reviewing the timesheet it is clear to me that had Mr. Kushner simply served Citibank with a new Subpoena at the minimal cost of $35.00, without filing the Motion to Compel, a minimum of **15 hours** of attorney time, or $4,125.00, could have been avoided altogether, thereby substantially mitigating the alleged "damages," because the only "damages" alleged are the attorney's fees and costs incurred.

21.      Such mitigation is further demonstrated by the very last entry on Mr. Kushner's time sheet, dated August 3, 2016, wherein he notes that he received and made a preliminary review of bank statements from Citibank.

Case No.:  0:11-CV-62422-JIC

22.    In addition, Mr. Kushner billed 4.1 hours to prepare and file a minimal 2-page Response to the Motion to Withdraw [DE 147]. The Response does not contain any citations to case law or statutes, and there is no reason why such Response should have taken 4.1 hours to prepare and file, unnecessarily costing an additional $1,127.50 in legal fees.

23.    It is, quite frankly, insulting that Mr. Kushner chose to pursue the path of filing the Motion to Compel, to hold me responsible for his clients "damages" when the only damages are the attorney's fees incurred in filing a Motion that was both unnecessary and costly.

24.    This is also after I had advised Mr. Kushner that my client owes me over $24,000.00 in attorney's fees, excluding the additional time I have incurred and continue to incur to respond to the Motion to Compel, appear in Court for the hearing, and prepare and file this Affidavit.

25.    It is also not reasonable for Mr. Kushner to have charged the additional $1,127.50 for filing his response to my Motion to Withdraw, and I should not be responsible for same.

26.    Due to the fact that I am owed a substantial amount of attorney's fees from my client that I will in all likelihood never be paid for, and because Plaintiffs' only damages are the attorney's fees Mr. Kushner incurred, including those unnecessarily incurred by filing the Motion to Compel, and further due to Mr. Kushner's failure to mitigate the damages by simply serving a new Subpoena on Citibank, this Court should not award Mr. Kushner or his client any attorney's fees against me personally.

27.    In the alternative, the attorney's fees incurred by Mr. Kushner could simply be added to the Judgment amount already owed by Acunto to the Plaintiffs.

28.    As a further alternative, if this Court deems that any attorney's fees should be awarded against me personally due to my failure to safeguard the Citibank documents to the

Case No.:  0:11-CV-62422-JIC

extent I received them, then Mr. Kushner's fees should be substantially reduced by at least the

amount of $5,252.50 ($4,125.00 + $1,127.50), and that any fee awarded should, at a minimum,

be split evenly between me and my client.

FURTHER AFFIANT SAYETH NAUGHT.


By: _____
Jonathan Bloom


STATE OF FLORIDA                    )
                                    )§§:
COUNTY OF PALM BEACH                )

SWORN TO AND SUBSCRIBED before me this 1ᵗ day of August, 2016, by Jonathan Bloom, who is ☒ personally known to me, or ☐ who produced _____ as identification.

NOTARY PUBLIC, STATE OF _Florida_
Print Name: _Stacey Nafis_
My Commission Expires: _02-19-2017_

STACEY NAFIS
MY COMMISSION #EE876226
EXPIRES: FEB 19, 2017
Bonded through 1st State Insurance

EXHIBIT "A"

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into this 1st day of December, 2014 (hereinafter, "Effective Date"), by and between Leon Frenkel and Periscope Partners, L.P. (collectively, the "Judgment Creditors"), and John P. Acunto, Absolute Partners, Inc. and Absolute Pro Studios, Inc. (collectively, the "Judgment Debtors").

## RECITALS

A.     On June 14, 2011, a Final Judgment was entered against the Judgment Debtors in the United States District Court for the Eastern District of Pennsylvania in favor of the Judgment Creditors (the "Final Judgment").

B.     On November 14, 2011, the Judgment Creditors filed the Final Judgment in the United States District Court for the Southern District of Florida, and the matter was given the following style:   *Leon Frenkel, et al v. John P. Acunto, et al,* Case No. 11-62422-CIV-COHN/SELTZER (the "Collection Proceedings").

C.     The current amount due from Judgment Debtors to Judgment Creditors under the Final Judgment is $1,047,302.87 (principal and accrued post-judgment interest of $962,717.91 plus legal fees and costs of $84,584.96) (hereinafter "Judgment Balance").

D.     The parties are desirous of fully and finally resolving all of their disputes, including those raised or which could have been raised in connection with any collection of the Final Judgment, including without limitation the Collection Proceedings, on the terms set forth in this Agreement.

NOW THEREFORE, in consideration of the covenants and agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all parties, it is agreed by and among the parties hereto as follows:

1.   **Recitals**.  The above Recitals are incorporated herein by reference.

2.   **Current Amounts Due**.  The Parties agree that the Judgment Balance is the total amount due from Judgment Debtors to Judgment Creditors under the Final Judgment as of November 3, 2014.  Subject to the terms of this Agreement, Judgment Creditors agree to accept a discounted payment from Judgment Debtors as full and final settlement of the Judgment Balance.  Notwithstanding, in the event Judgment Debtors fail to timely pay the Settlement Sum (as defined below) plus accrued interest by the Termination Date (as defined below) or otherwise default under this Agreement following written notice from Judgment Creditors (as described herein), the Judgment Balance plus accrued interest less any amounts paid hereunder (hereinafter "Net Balance Due") shall be immediately due and payable, and Judgment Creditors shall retain all rights under the law, including, but not limited to, enforcement of the Net Balance Due in the Collection Proceedings.

3.   **Settlement Sum**.  The Judgment Debtors hereby agree to pay to the Judgment Creditors the total amount of $804,000.00 in full and final settlement of all claims between them (the "Settlement Sum").

   a.   The Settlement Sum shall accrue interest at the rate of twelve (12%) percent per annum calculated on a daily basis commencing on the Effective Date on this amount less any cash distributions to the Judgment Creditors in accordance with this Agreement.

4.   **Payment of Settlement Sum**.

   a.   The Settlement Sum plus accrued interest shall be paid by Judgment Debtors to Judgment Creditors no later than nine (9) months from the Effective Date (hereinafter "Termination Date").  If the Settlement Sum plus any accrued interest is not paid in full to the Judgment Creditors by the Termination Date, Judgment Debtors shall be in default of this Agreement.  Notwithstanding, in the event Judgment Creditors receive at least $600,000 of the Settlement Sum within nine (9)

months from the Effective Date, the Termination Date shall be extended by an additional three (3) months.

  b.  Judgment Debtors contemplate paying the Settlement Sum, plus any accrued interest, via the liquidation of stock owned or controlled by Judgment Debtors.  Judgment Debtors shall transfer One Hundred (100) shares of preferred stock of Nyxio Technologies Corp. (the "Preferred Shares") (OTC: NYXO) into an account to be established at Morgan Stanley (the "Stock Account") no later than December 31, 2014 (the "Stock Transfer Date").

  c.  For purposes of calculation, all payments towards the Settlement Sum will apply first to principal first and then to interest, which will continue to accrue until paid in full.

  5. **Legal Opinion as to Unlimited Sale of Stock.**  As a condition to this Agreement Judgment Debtors shall provide a legal opinion from a qualified securities law attorney (the "Opinion"), satisfactory to Judgment Creditors, verifying Judgment Debtors' right to: a) transfer the Preferred Shares into the Stock Account free and clear of any liens, claims, lockup agreements, shareholder agreements, encumbrances or restrictions; and b) allowing the immediate unlimited and unrestricted transfer or public sale of the underlying shares of common stock of Nyxio Technologies Corp. (the "Company") obtained upon conversion of the Preferred Shares (the "Common Stock") by Escrow Agent (as defined below) in accordance with applicable state and federal securities laws or pursuant to an exemption therefrom without compliance with the registration requirements of such laws.  The receipt of the Opinion is a material inducement to Judgment Creditors to enter into this Agreement, and the failure of Judgment Debtors to provide the Opinion no later than December 31, 2014, shall be an event of default of this Agreement.  Judgment Debtors are not entitled to the notice and cure periods outlined in Paragraph 17, below, in the event of breach of this Paragraph 5, and Judgment Creditors shall have the right to the remedies outlined in Paragraph 18- Default, below.

[v10]

6.   **Management of Stock**.  The Stock Account shall be opened in the name of "Law Offices of Jonathan Bloom, P.A., Trust Account f/b/o John P. Acunto," and shall be managed by Jonathan Bloom, Esq., Law Offices of Jonathan Bloom, P.A. ("Escrow Agent").   Escrow Agent shall sign this Agreement solely in his capacity as Escrow Agent and it is understood and agreed by the parties hereto that Escrow Agent's only responsibilities and duties under this Agreement are those as specifically set forth herein as Escrow Agents.  At the time of opening the Stock Account, Escrow Agent shall provide Morgan Stanley written authority for Leon Frenkel to manage the Stock Account and authorizing Leon Frenkel to instruct Morgan Stanley directly when and how to sell the Common Stock.

7.   **Sale of Stock**.  The Preferred Shares shall be held in the Stock Account for no longer than the Termination Date, or any extension thereof as set forth in Paragraph 4(a), above.  Leon Frenkel shall exercise his authority to sell such portion of the Common Stock as he deems appropriate to do so, at any time within the term of this Agreement, but no less than ten (10%) percent of the Stock per month.  The proceeds of any such sale shall be distributed bi-weekly by wire transfer to the Judgment Creditors, as directed by Leon Frenkel, upon written notice by the Escrow Agent to the Judgment Debtors and Judgment Creditors.  Prior authorization to release said sale proceeds will not be required.  Judgment Creditors and Judgment Debtors shall both equally split the broker fees and costs of any trades of such Common Stock.  Notwithstanding the foregoing, the parties hereto agree and understand that the common stock is very thinly traded without significant volume with few, if any, shares traded on a daily, weekly, or even monthly basis.  Accordingly, the parties further agree and understand that selling and monetizing the Shares is not guaranteed and the selling of the Shares may depress or suppress the value of the Shares in the market, and neither Judgment Debtors nor Judgment Creditors shall have any recourse against Escrow Agent or Leon

Frenkel for any such decrease in value, nor shall Escrow Agent or Leon Frenkel be held liable for any such decrease in value.

8.      In the event Judgment Creditors are fully paid the Settlement Sum prior to the Termination Date, less their one-half of the broker fees as set forth below in this Paragraph, any and all remaining Preferred Shares held by the Escrow Agent shall be returned to Judgment Debtors subject to Judgment Creditors' Conversion Option, as defined below.  If at any time there is not sufficient Preferred Shares to pay the full Settlement Sum or if substantially all of the Preferred Shares has been sold and the Judgment Creditors have not received the full Settlement Sum prior to the Termination Date, the Judgment Debtors shall transfer additional shares of Preferred Shares to the Stock Account or make a cash payment to Judgment Creditors to pay any remaining balance of the Settlement Sum.

9.      **Conversion Option.**  Judgment Creditors shall have an absolute right during the initial nine (9) month term of this Agreement to exercise an option to retain a portion of the unsold Preferred Shares as full satisfaction of the Settlement Sum and interest as follows (the "Conversion Option"):

The outstanding balance due on the Settlement Sum at the time of exercising the Conversion Option (calculated as the Settlement Sum plus accrued interest less all amounts received by Judgment Creditors pursuant to this Agreement (the "Option Balance")) shall be satisfied via the transfer of the amount of Preferred Shares from the Stock Account to Leon Frenkel or an account of his choosing, calculated as follows: The total number of Preferred Shares to transfer (the "Total Option Shares") shall be a) the number of Preferred Shares (including fractional amounts) equal to the Option Balance (rounded up to the nearest $1,000) at a value of  $10,000 per one share of preferred stock (the "Option Stock"),  plus b) one half (1/2) of the remaining number of Preferred

Shares in the Stock Account immediately preceding the exercise of the Conversion Option less the Option Stock. An illustrative example of the Conversion Option is attached hereto as Exhibit "C."

10.     Prior authorization of Judgment Debtors for the Conversion Option shall not be required.   Judgment Creditors shall notify Judgment Debtors and Escrow Agent in writing of the intent to exercise the Conversion Option. In such event, the completed transfer of Preferred Shares as set forth in this section shall constitute a full satisfaction of the Settlement Sum plus any accrued interest due under this Agreement.

11.     **Citibank Subpoena.** During the course of the Collection Proceedings, a Subpoena Duces Tecum was issued and served on Citibank, N.A. (the "Subpoena"). The parties agree that Citibank shall be instructed by counsel for Judgment Debtors to produce all documents responsive to the Citibank Subpoena to counsel for Judgment Debtors and that counsel for Judgment Debtors shall hold the Citibank Documents in trust. In the event Judgment Debtors timely pay Judgment Creditors the Settlement Sum and accrued interest when due and otherwise comply with the terms of this Agreement, counsel for Judgment Debtors shall, upon receipt of written confirmation from counsel for Judgment Creditors, destroy the Citibank Documents or deliver same to the Judgment Debtors. In the event of Judgment Debtors' breach of this Agreement and Judgment Debtors failure to cure such breach within ten (10) calendar days, counsel for Judgment Debtors shall forthwith forward the Citibank Documents to counsel for Judgment Creditors.

12.     Judgment Debtors and Non-Parties, Kaptiva Group, LLC, Chasin Records, LLC, Johnkara, LLC and Chasin Music Group, Inc. (the "Non-Parties"), hereby expressly waive any objections to the production of the Citibank Documents as required herein.

13.     In furtherance of this Agreement, within five (5) days of the Effective Date, counsel for Judgment Debtors and counsel for Non-Parties shall: file a Notice of Withdrawal of the pending *Motion to Stay Order Denying Non-Parties' [Renewed] Motions for Protective Orders and to Quash Subpoena Duces Tecum* (DE 123, hereinafter, the "Motion to Stay"), and the *Objections to Magistrate Judge's Order Denying Non-Parties' Renewed Motions for Protective Order and to Quash Subpoena Duces Tecum* (DE 124, the "Objections") in the Collection Proceedings (or such other documents as reasonably necessary to inform the Court of Judgment Debtors' and Non-Parties' intention to abandon such Motion to Stay and Objections; notify Citibank, N.A. by e-mail, with a copy to counsel for Judgment Creditors, that the Collection Proceedings have been conditionally settled, that the Judgment Debtors and Non-Parties have withdrawn the Motion to Stay, the Objections and agree that the Citibank Documents should be produced to counsel for Judgment Debtors subject to the terms of the this Agreement.

14.     **Mutual Releases.** Simultaneously with the execution of this Agreement, the parties hereto shall execute mutual Releases (the "Releases") identical in form and substance to those attached hereto as Composite Exhibit "A." The Releases shall be held in escrow by the parties' respective counsel, and shall be exchanged only after the Settlement Sum has been paid in full by Judgment Debtors, and all settlement documents are executed by all parties and submitted to the Court.

15.     **Dismissal of the Litigation without Prejudice.** Simultaneously with the execution of this Agreement, the parties, by and through their counsel, shall execute a Joint Stipulation for Order Approving and Adopting Settlement Agreement as Order of the Court and Dismissal without Prejudice, identical in form and substance to that attached hereto as Exhibit "B" (hereinafter "Joint Stipulation"). Counsel for the Judgment Creditors shall file the Joint Stipulation in the Collection

Action.  The parties hereto agree to act in good faith to take such actions as reasonably necessary to facilitate the Court' acceptance of the terms hereof.  The terms and provisions of this Agreement shall remain confidential and this Agreement shall not be filed with the Court, unless required by the Court or if it is necessary for the Judgment Creditor to enforce terms and provisions of this Agreement.

16.      **Satisfaction of Judgment.**  Upon payment of the Settlement Sum and all conditions of this Settlement Agreement have been satisfied, Judgment Creditors shall file and record a Satisfaction of the Final Judgment in all Counties and in any jurisdiction where same has been recorded.

17.      **Notice of Breach and Cure Period.**  In the event of Judgment Debtors' breach of any of the provisions of this Agreement (other than Paragraph 5) and Judgment Debtors' failure to cure such breach within ten (10) business days following written notice to Judgment Debtors (via e-mail to counsel for Judgment Debtors), the Judgment Debtors shall be in default of this Agreement.

18.      **Default**.  Upon default, the Judgment Balance plus any accrued interest, less any amounts paid to Judgment Creditors under this Agreement shall remain due from the Judgment Debtors to Judgment Creditors.  In the event of default by Judgment Debtors, Judgment Creditors shall be entitled to re-open the Collection Proceedings and seek all relief available to Judgment Creditors under the Final Judgment, this Agreement or otherwise available under the law.

19.      **Indemnification of Escrow Agents.**  The Judgment Debtors and Judgment Creditors agree to indemnify and hold Escrow Agents harmless from any liability, loss, or damage arising from or related to the management of the Stock Account and/or the sale of the Common Stock.  The Judgment Debtors and Judgment Creditors agree to indemnify and hold Escrow Agents harmless from any liability, loss, or damage arising from or related to its performance as Escrow Agents under

[v10]

this Agreement.

20.     **Prevailing Party Attorneys' Fees.**  Should any party hereto be required to seek judicial relief to enforce the terms of this Agreement, the prevailing party in such proceedings shall be entitled to recover its attorneys' fees and court costs, including fees and costs incurred at the trial level and on appeal.

21.     **Modification of Agreement.**  This Agreement may be modified only upon a further written agreement signed by all of the parties hereto.

22.     **Representation by Counsel.**  Each party has read and understands each and every provision contained in this Agreement and has had the opportunity to seek the advice and representation of independent counsel.  This Agreement contains the final and complete expression of the agreement of the parties with respect to any of the parties' disputes, including without limitation all issues, claims, and demands which were raised or which could have been raised in connection with the Collection Proceedings.

23.     **Joint Work Product.**  This Agreement is the joint work product of all parties hereto. Accordingly, no term or provision herein shall be more strictly construed against any one party on the legal basis that a contract should be construed against the drafting party.

24.     **Time is of Essence.**  Time is of the essence of this Agreement and each and every term and condition and covenant contained herein.

25.     **Invalidity of Provision.**  If any provision of this Agreement is held to be invalid or unenforceable by a court of competent jurisdiction, the other provisions of this Agreement shall remain in full force and effect.

26.     **Successors and Assigns.**  This Agreement shall be binding on all successors or assigns of the parties.

27.     **Counterparts.**  This Agreement may be executed in several counterparts, each of which shall constitute an original and all of which together shall constitute one and the same instrument. This Agreement and any documents relating to it may be executed and transmitted to any other party by facsimile or email of a PDF, which facsimile or PDF shall be deemed to be, and utilized in all respects as, an original, wet-inked document.

28.     **Governing Law.**  The terms of this Agreement are to be governed according to the laws of the State of Florida.

29.     **Entire Agreement.**  This Agreement represents the entire agreement of the parties hereto, and there are no other written or oral agreements upon which any of the parties has relied.

30.     **Further Assurances.**  The parties hereto shall execute all documents necessary and appropriate to finally settle this matter.  The parties further agree to execute all documents necessary and appropriate to effectuate the parties' intentions hereunder.

31.     **WAIVER OF JURY TRIAL.**  EACH PARTY HERETO, KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY, WAIVES ITS RIGHT TO TRIAL BY JURY IN ANY PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE RELATIONSHIP BETWEEN THE PARTIES.

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the 1st day of December, 2014.

*[signature pages follow]*

Witnesses:

Periscope Partners, L.P.

By: _____

Its: _____General Partner_____

_____

_____


STATE OF _Pennsylvania_ )
                        ) ss.:
COUNTY OF _Montgomery_ )

    Sworn to and subscribed before me this _4th_ day of _December_, 2014 by _Leon Frankel_, as _General Partner_ of Periscope Partners, L.P., who personally appeared before me, ☐ who is personally known to me, or ☐ who produced _____ as identification.

Print Name: _Jerrold Frankel_
Notary Public- _PA_
My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JERROLD B. FRANKEL, Notary Public
Lower Merion Twp., Montgomery County
My Commission Expires April 3, 2016

Witnesses:

_____                    _____
                                           Leon Frenkel
_____


STATE OF _Pennsylvania_ )
                        ) ss.:
COUNTY OF _Montgomery_ )

    Sworn to and subscribed before me this _4th_ day of _December_, 2014 by Leon Frenkel, who personally appeared before me, ☐ who is personally known to me, or ☐ who produced _____ as identification.

_____

Print Name: _Jerrold Frenkel_
Notary Public- _PA_
My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JERROLD B. FRANKEL, Notary Public
Lower Merion Twp., Montgomery County
My Commission Expires April 3, 2016

Settlement Agreement
-12-

[v10]

Witnesses:

Absolute Partners, Inc.

By: _____

Its: _____

STATE OF ~~FLORIDA~~ North Carolina )
                                    ) ss.:
COUNTY OF ~~PALM BEACH~~ Mecklenburg )

Sworn to and subscribed before me this 3rd day of December , 2014 by
John P. Acunto, Jr. as CEO of Absolute Partners, Inc., who personally
appeared before me, ☑ who is personally known to me, or ☑ who produced
Florida Driver's License as identification.

Laurie L. Hearrell

Print Name: Laurie L. Hearrell
Notary Public-State of ~~Florida~~ North Carolina
My Commission Expires: 10-14-17

> LAURIE L HEARRELL
> NOTARY PUBLIC
> Mecklenburg County
> North Carolina
> My Commission Expires October 4, 2017

Settlement Agreement
-13-

[y10]

Witnesses:

Absolute Pro Studios, Inc.

By: _____

Its: _____ *CEO*

*North Carolina*

STATE OF ~~FLORIDA~~          )
          *Mecklenburg*       ) ss.:
COUNTY OF ~~PALM BEACH~~      )

          Sworn to and subscribed before me this *3rd* day of *December*, 2014 by
*John P. Acunto, Jr.*, as _____ *CEO* _____ of Absolute Pro Studios, Inc., who
personally appeared before me, ☐ who is personally known to me, or ☒ who produced
*Florida Driver's License* as identification.

          _____
Print Name: *Laurie L. Hearrell*
Notary Public-State of ~~Florida~~ *North Carolina*
My Commission Expires: *10-4-17*

```
┌─────────────────────────────────────────┐
│           LAURIE L HEARRELL              │
│             NOTARY PUBLIC                │
│           Mecklenburg County             │
│             North Carolina               │
│  My Commission Expires October 4, 2017   │
└─────────────────────────────────────────┘
```

Witnesses:

_____                     _____
      JESSIE Y LAWSON                                      John P. Acunto


                  North Carolina
STATE OF ~~FLORIDA~~                    )
                       Union           ) ss.:
COUNTY OF ~~PALM BEACH~~               )

        Sworn to and subscribed before me this ___4th___ day of ___December___ , 2014 by John P.
Acunto, who personally appeared before me, ☐ who is personally known to me, or ☒ who produced
___FL DL___ as identification.

┌─────────────────────────────────┐
│        ELISA C LOZANO           │          ___Elisa C Lozano___
│         Notary Public           │          Print Name: ___Elisa C Lozano___
│     Union Co., North Carolina   │          Notary Public-State of ~~Florida~~ NC
│  My Commission Expires Dec. 05, 2017 │      My Commission Expires: 12/05/2017
└─────────────────────────────────┘

Settlement Agreement
-15-                                                             [v10]

**Escrow Agent:**

Witnesses:

Law Offices of Jonathan Bloom, P.A.

By: _____

_____

Its: _____

_____

STATE OF FLORIDA          )
                          ) ss.:
COUNTY OF PALM BEACH      )

     Sworn to and subscribed before me this ___ day of _____, 2014 by _____, as _____ of Law Offices of Jonathan Bloom, P.A., who personally appeared before me, ☑ who is personally known to me, or ☐ who produced _____ as identification.

Print Name: _____
Notary Public-State of Florida
My Commission Expires:

SUSAN ROY
MY COMMISSION # FF076563
EXPIRES: February 03, 2018

Settlement Agreement
-16-

[v10]

**Non-Parties Consent and Waiver:**

Non-Parties, Kaptiva Group, LLC, Chasin Records, LLC, Johnkara, LLC and Chasin Music Group, Inc. (the "Non-Parties"), hereby:

1. Expressly consent to the terms of the above Settlement Agreement;

2. Consent to their counsel of record, Bloom and Freeling, filing a Notice of Withdrawal of the pending *Motion to Stay Order Denying Non-Parties' [Renewed] Motions for Protective Orders and to Quash Subpoena Duces Tecum* (DE 123, hereinafter, the "Motion to Stay"), and the *Objections to Magistrate Judge's Order Denying Non-Parties' Renewed Motions for Protective Order and to Quash Subpoena Duces Tecum* (DE 124, the "Objections") in the Collection Proceedings (or such other documents as reasonably necessary to inform the Court of Non-Parties' intention to abandon such Motion to Stay and Objections; and

3. Expressly waive any objections to the production of the Citibank Documents as required by the terms of the above Settlement Agreement.

Dated as of this 4th day of December, 2014.

**Kaptiva Group, LLC**

By: John P. Acunto
Its: mm

**Chasin Records, LLC**

By: John P. Acunto
Its: CEO

**Johnkara, LLC**

By: John P. Acunto
Its: mm

**Chasin Music Group, Inc.**

By: John P. Acunto
Its: CEO

## Composite Exhibit "A"

## GENERAL RELEASE

*Know All Men By These Presents*, that John P. Acunto, an individual, Absolute Partners, Inc., and Absolute Pro Studios, Inc. (collectively, the "First Party") for and in consideration of the sum of Ten ($10.00) Dollars and other good and valuable consideration, received by First Party from Leon Frenkel, an individual, and Periscope Partners, L.P. (collectively, the "Second Party"), the receipt and sufficiency of which is hereby acknowledged, does

> (Wherever used herein the terms "First Party" and "Second Party" shall include singular and plural, heirs, legal representatives, agents, attorneys and assigns of individuals, and the subsidiaries, affiliates, parent corporations, an professional associations and each of their respective present and former officers, agents, employees including, but not limited to, shareholders, partners, directors, attorneys, insurers, sureties, successors and assigns of corporations, partnerships, agencies, or political bodies, wherever the context so admits or requires.)

Hereby remise, release, acquit, satisfy and forever discharge the Second Party of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, costs (including attorneys' fees, expert fees and out of pocket expenses), pre and post-judgment interest, obligations, losses, or loss of services, expenses, compensation, judgments, executions, claims and demands whatsoever, in law or in equity, which said First Party ever had or now has against the Second Party, or which any personal representative, successor, heir or assign of said First Party hereafter can, shall or may have against the Second Party, for, upon or by reason of any matter, cause or things unforeseen, from the beginning of the world to the day of these presents, including, but not limited to, all issues, causes, claims, counterclaims, set-offs, and allegations which were raised or could have been raised in, relating to, or arising out of that certain action filed in the United States District Court, Southern District of Florida, styled: LEON FRENKEL, ET AL. v. JOHN P. ACUNTO, ET AL., Case No. 11-62422-CIV-COHN/SELTZER.

*[signature pages follow]*

[v10]

Witnesses:

_JESSIE Y. LAWSON_

Absolute Partners, Inc.

By: _____

Its: _____CEO_____

STATE OF _North Carolina_
                                    ) ss.:
COUNTY OF _Union_          )

Sworn to and subscribed before me this ___4th___ day of ___December___, 2014 by _John P. Acunto_, as ___CEO___ of Absolute Partners, Inc., who personally appeared before me, ☐ who is personally known to me, or ☒ who produced _FL DL_ as identification.

_Elisa C Lozano_
Print Name: _Elisa C Lozano_
Notary Public-State of _NC_
My Commission Expires: _12/05/2017_

ELISA C LOZANO
Notary Public
Union Co., North Carolina
My Commission Expires Dec. 05, 2017

[v10]

Witnesses:

_____   Absolute Pro Studios, Inc.

_____   By: _____
JESSIE Y LAWSON
                                  Its: _____
                                          CEO


STATE OF _North Carolina_

                    ) ss.:
COUNTY OF _Union_   )

     Sworn to and subscribed before me this _4th_ day of _December_ , 2014 by
_John P Acunto_ , as _CEO_ of Absolute Pro Studios, Inc., who
personally appeared before me, ☐ who is personally known to me, or ☒ who produced
_____ FL DL _____ as identification.

                                   _Elisa C Lozano_
                                   Print Name: _Elisa C Lozano_
                                   Notary Public-State of _NC_
                                   My Commission Expires: _12/05/2017_

┌─────────────────────────────────┐
│        ELISA C LOZANO            │
│        Notary Public            │
│      Union Co., North Carolina   │
│ My Commission Expires Dec. 05, 2017 │
└─────────────────────────────────┘

Witnesses:

_____

_____

_____
John P. Acunto

STATE OF *North Carolina* )
                                          ) ss.:
COUNTY OF *Mecklenburg* )

Sworn to and subscribed before me this *3rd* day of *December*, 2014 by John P. Acunto, who personally appeared before me, ☐ who is personally known to me, or ☑ who produced *Florida driver's license* as identification.

*Laurie L. Hearrell*

Print Name: *Laurie L. Hearrell*
Notary Public-State of *North Carolina*
My Commission Expires: *10-14-17*

```
┌─────────────────────────────────────┐
│        LAURIE L HEARRELL             │
│         NOTARY PUBLIC                │
│        Mecklenburg County            │
│         North Carolina               │
│  My Commission Expires October 4, 2017 │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-62422-CIV-COHN/SELTZER

LEON FRENKEL, ET AL.

      Plaintiffs,

vs.

JOHN P. ACUNTO, ET AL.

      Defendants.

_____/

### JOINT STIPULATION FOR ORDER APPROVING AND ADOPTING SETTLEMENT AGREEMENT AS ORDER OF COURT AND DISMISSAL WITHOUT PREJUDICE

Plaintiffs, LEON FRENKEL and PERISCOPE PARTNERS, LP, and Defendants, JOHN P. ACUNTO, ABSOLUTE PARTNERS, INC., and ABSOLUTE PRO STUDIOS, INC., and by and through their undersigned counsel, hereby stipulate and agree as follows:

1.      On December 1, 2014, the parties entered into a Settlement Agreement that resolves this pending action.

2.      Pursuant to the terms of the Settlement Agreement, the parties:

a.      Liquidated the amount due under the subject Judgment plus accrued interest and attorneys' fees to date;

b.      Negotiated a Settlement Sum and the terms for payment of same;

c.      Fully resolved the dispute regarding the Citibank Subpoena and the pending Objections to Magistrate Order (DE 124) with Non-Parties agreeing to withdraw the Objections;

[v10]

d.      Agreed to the dismissal of the action without prejudice with the Court to retain jurisdiction to enforce the terms of the Settlement Agreement; and

e.      To submit this Joint Stipulation to the Court seeking entry of the proposed Order Approving and Adopting Settlement Agreement and for Dismissal without Prejudice, a copy of which is attached hereto.

3.      To the extent the Court requires a review of the Settlement Agreement, the parties respectfully request the Court conduct an *in camera* inspection to protect the confidential terms of the agreement.

Respectfully Submitted,

| KUSHNER LAW, P.L. | BLOOM & FREELING |
|---|---|
| s/ Mark D. Kushner | s/L. Rachel Dolnick |
| Florida Bar Number: 21056<br>12555 Orange Drive, Suite 211<br>Davie, FL 33330<br>Telephone: (954) 862-1430<br>mdk@mkushnerlaw.com<br>Counsel for Plaintiffs | Florida Bar Number: 898392<br>2295 NW Corporate Blvd, Suite 117<br>Boca Raton, FL 33431-7330<br>561-864-0000<br>dolnicklaw@bellsouth.net<br>Co-Counsel for Defendants and Non-Parties |
| | |

# GENERAL RELEASE

***Know All Men By These Presents***, that Leon Frenkel, an individual, and Periscope Partners, L.P. (collectively, the "First Party"), for and in consideration of the sum of Ten ($10.00) Dollars and other good and valuable consideration, received by First Party from John P. Acunto, an individual, Absolute Partners, Inc., and Absolute Pro Studios, Inc. (collectively, the "Second Party"), the receipt and sufficiency of which is hereby acknowledged, does

> (Wherever used herein the terms "First Party" and "Second Party" shall include singular and plural, heirs, legal representatives, agents, attorneys and assigns of individuals, and the subsidiaries, affiliates, parent corporations, an professional associations and each of their respective present and former officers, agents, employees including, but not limited to, shareholders, partners, directors, attorneys, insurers, sureties, successors and assigns of corporations, partnerships, agencies, or political bodies, wherever the context so admits or requires.)

Hereby remise, release, acquit, satisfy and forever discharge the Second Party of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, costs (including attorneys' fees, expert fees and out of pocket expenses), pre and post-judgment interest, obligations, losses, or loss of services, expenses, compensation, judgments, executions, claims and demands whatsoever, in law or in equity, which said First Party ever had or now has against the Second Party, or which any personal representative, successor, heir or assign of said First Party hereafter can, shall or may have against the Second Party, for, upon or by reason of any matter, cause or things unforeseen, from the beginning of the world to the day of these presents, including, but not limited to, all issues, causes, claims, counterclaims, set-offs, and allegations which were raised or could have been raised in, relating to, or arising out of that certain action filed in the United States District Court, Southern District of Florida, styled: LEON FRENKEL, ET AL. v. JOHN P. ACUNTO, ET AL., Case No. 11-62422-CIV-COHN/SELTZER.

*[signature pages follow]*

[v10]

Witnesses:                                  Periscope Partners, L.P.

_____                     By:_____

_____                     Its:_____


STATE OF _____  )
                                )  ss.:
COUNTY OF _____ )

  Sworn to and subscribed before me this _____ day of _____, 2014 by
_____, as _____ of Periscope Partners, L.P., who personally
appeared before me, ☐ who is personally known to me, or ☐ who produced
_____ as identification.

             Print Name:_____
             Notary Public- State of _____
             My Commission Expires:

[v10]

Witnesses:

_____          _____
                                         Leon Frenkel
_____


STATE OF _____ )
                         ) ss.:
COUNTY OF _____ )

    Sworn to and subscribed before me this _____ day of _____, 2014 by Leon Frenkel, who personally appeared before me, ☐ who is personally known to me, or ☐ who produced _____ as identification.

_____

Print Name:_____
Notary Public- State of _____
My Commission Expires:

[v10]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-62422-CIV-COHN/SELTZER

LEON FRENKEL, ET AL.

     Plaintiffs,

vs.

JOHN P. ACUNTO, ET AL.

     Defendants.

_____/

<u>ORDER APPROVING AND ADOPTING SETTLEMENT AGREEMENT AND DISMISSAL
WITHOUT PREJUDICE</u>

     THIS CAUSE is before the Court on the Joint Stipulation for Order Approving and Adopting Settlement Agreement as Order of Court and Dismissal Without Prejudice (DE    ), and, the Court having reviewed and considered the relevant filings and being otherwise fully advised, it is hereby ORDERED that:

     1.    The Settlement Agreement is hereby approved and adopted as an order of the Court.

     2.    This action is hereby dismissed without prejudice, with each party to bear fees and costs in accordance with the terms of the Settlement Agreement.

     3.    This matter shall be deemed closed for administrated purposes only. The Court retains jurisdiction to enforce the terms of the Settlement Agreement and to enter such further orders as may be necessary and proper.

     DONE AND ORDERED in Fort Lauderdale, Florida, this _____ day of _____, 2014.

                          _____
                          BARRY S. SELTZER
                          CHIEF UNITED STATES MAGISTRATE JUDGE

Copies to: All Counsel of Record

[y10]

EXHIBIT "C"

<u>CONVERSION OPTION</u>
<u>ILLUSTRATIVE EXAMPLE</u>

- Notice of intent to exercise Conversion Option provided to Judgment Creditors and Escrow Agent seven months following the Effective Date;

- After 7 months, $404,000 paid to Judgment Creditors to date, accrued interest $45,000, and 55 Shares Preferred Shares in Stock Account at time of notice;

- "Option Balance" = $445,000 ($804,000 + 45,000 - $404,000);

- "Option Shares" = 44.50 preferred Shares ($445,000/10,000);

- "Remaining Shares" = 9.5 (55 - 44.50)

- "Total Option Shares" = 49.50 Shares (44.50 plus 5.25 preferred shares - 1/2 of 9.5)

[v.10]

# GENERAL RELEASE

*Know All Men By These Presents*, that Leon Frenkel, an individual, and Periscope Partners, L.P. (collectively, the "First Party"), for and in consideration of the sum of Ten ($10.00) Dollars and other good and valuable consideration, received by First Party from John P. Acunto, an individual, Absolute Partners, Inc., and Absolute Pro Studios, Inc. (collectively, the "Second Party"), the receipt and sufficiency of which is hereby acknowledged, does

(Wherever used herein the terms "First Party" and "Second Party" shall include singular and plural, heirs, legal representatives, agents, attorneys and assigns of individuals, and the subsidiaries, affiliates, parent corporations, an professional associations and each of their respective present and former officers, agents, employees including, but not limited to, shareholders, partners, directors, attorneys, insurers, sureties, successors and assigns of corporations, partnerships, agencies, or political bodies, wherever the context so admits or requires.)

Hereby remise, release, acquit, satisfy and forever discharge the Second Party of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, costs (including attorneys' fees, expert fees and out of pocket expenses), pre and post-judgment interest, obligations, losses, or loss of services, expenses, compensation, judgments, executions, claims and demands whatsoever, in law or in equity, which said First Party ever had or now has against the Second Party, or which any personal representative, successor, heir or assign of said First Party hereafter can, shall or may have against the Second Party, for, upon or by reason of any matter, cause or things unforeseen, from the beginning of the world to the day of these presents, including, but not limited to, all issues, causes, claims, counterclaims, set-offs, and allegations which were raised or could have been raised in, relating to, or arising out of that certain action filed in the United States District Court, Southern District of Florida, styled: LEON FRENKEL, ET AL. v. JOHN P. ACUNTO, ET AL., Case No. 11-62422-CIV-COHN/SELTZER.

*[signature pages follow]*

General Release
Page 1 of 3

Witnesses:

Periscope Partners, L.P.

By: _____

Its: _____

STATE OF _Pennsylvania_ )
                          ) ss.:
COUNTY OF _Montgomery_ )

Sworn to and subscribed before me this _4th_ day of _December_, 2014 by _Leon Frenkel_, as _General Partner_ of Periscope Partners, L.P., who personally appeared before me, ☐ who is personally known to me, or ☐ who produced _____ as identification.

Print Name: _Jerrold Frenkel_
Notary Public- State of _PA_
My Commission Expires: _____

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JERROLD B. FRANKEL, Notary Public
Lower Merion Twp., Montgomery County
My Commission Expires April 3, 2016

General Release
Page 2 of 3

Witnesses:

_____

_____

Leon Frenkel

STATE OF _Pennsylvania_ )
                        ) ss.:
COUNTY OF _Montgomery_ )

        Sworn to and subscribed before me this _4th_ day of _December_, 2014 by
Leon Frenkel, who personally appeared before me, ☐ who is personally known to me, or ☐ who
produced _____ as identification.

                                    Print Name: _Jerrold Frenkel_
                                    Notary Public- State of _PA_
                                    My Commission Expires:

                    COMMONWEALTH OF PENNSYLVANIA
                              NOTARIAL SEAL
                    JERROLD B. FRANKEL, Notary Public
                    Lower Merion Twp., Montgomery County
                    My Commission Expires April 3, 2016

General Release
Page 3 of 3

# GENERAL RELEASE

*Know All Men By These Presents*, that John P. Acunto, an individual, Absolute Partners, Inc., and Absolute Pro Studios, Inc. (collectively, the "First Party") for and in consideration of the sum of Ten ($10.00) Dollars and other good and valuable consideration, received by First Party from Leon Frenkel, an individual, and Periscope Partners, L.P. (collectively, the "Second Party"), the receipt and sufficiency of which is hereby acknowledged, does

> (Wherever used herein the terms "First Party" and "Second Party" shall include singular and plural, heirs, legal representatives, agents, attorneys and assigns of individuals, and the subsidiaries, affiliates, parent corporations, an professional associations and each of their respective present and former officers, agents, employees including, but not limited to, shareholders, partners, directors, attorneys, insurers, sureties, successors and assigns of corporations, partnerships, agencies, or political bodies, wherever the context so admits or requires.)

**Hereby** remise, release, acquit, satisfy and forever discharge the Second Party of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, costs (including attorneys' fees, expert fees and out of pocket expenses), pre and post-judgment interest, obligations, losses, or loss of services, expenses, compensation, judgments, executions, claims and demands whatsoever, in law or in equity, which said First Party ever had or now has against the Second Party, or which any personal representative, successor, heir or assign of said First Party hereafter can, shall or may have against the Second Party, for, upon or by reason of any matter, cause or things unforeseen, from the beginning of the world to the day of these presents, including, but not limited to, all issues, causes, claims, counterclaims, set-offs, and allegations which were raised or could have been raised in, relating to, or arising out of that certain action filed in the United States District Court, Southern District of Florida, styled: LEON FRENKEL, ET AL. v. JOHN P. ACUNTO, ET AL., Case No. 11-62422-CIV-COHN/SELTZER.

*[signature pages follow]*

Witnesses:

_____

_JESSIE Y LAWSON_

Absolute Partners, Inc.

By: _____

Its: __CEO__

STATE OF __North Carolina__

COUNTY OF __Union__

) ss.:

)

Sworn to and subscribed before me this __4th__ day of __December__, 2014 by __John P Acunto__, as __CEO__ of Absolute Partners, Inc., who personally appeared before me, ☐ who is personally known to me, or ☒ who produced __FL DL__ as identification.

_____
Print Name: __Elisa C Lozano__
Notary Public-State of __NC__
My Commission Expires: __12/05/2017__

**ELISA C LOZANO**
Notary Public
Union Co., North Carolina
My Commission Expires Dec. 05, 2017

General Release
Page 2 of 4

Witnesses:

_[signature]_

_JESSIE V LAWSON_

Absolute Pro Studios, Inc.

By: _[signature]_

Its: _CEO_

STATE OF _North Carolina_ )
                          ) ss.:
COUNTY OF _Union_ )

     Sworn to and subscribed before me this _4th_ day of _December_, 2014 by _John P Acunto_, as _CEO_ of Absolute Pro Studios, Inc., who personally appeared before me, ☐ who is personally known to me, or ☒ who produced _FL DL_ as identification.

_[Notary stamp:]_
**ELISA C LOZANO**
Notary Public
Union Co., North Carolina
My Commission Expires Dec. 05, 2017

_[signature] Elisa C Lozano_
Print Name: _Elisa C Lozano_
Notary Public-State of _NC_
My Commission Expires: _12/05/2017_

General Release
Page 3 of 4

Witnesses:

_____

_____

_____
John P. Acunto

STATE OF _North Carolina_ )
                          ) ss.:
COUNTY OF _Mecklenburg_   )

    Sworn to and subscribed before me this _3rd_ day of _December_, 2014 by John P. Acunto, who personally appeared before me, ☐ who is personally known to me, or ☑ who produced _Florida driver's license_ as identification.

_Laurie L. Hearrell_

Print Name: _Laurie L. Hearrell_
Notary Public-State of _North Carolina_
My Commission Expires: _10-14-17_

> LAURIE L. HEARRELL
> NOTARY PUBLIC
> Mecklenburg County
> North Carolina
> My Commission Expires October 4, 2017

General Release
Page 4 of 4

EXHIBIT "B"

**Stacey Nafis**

| | |
|---|---|
| **From:** | Stacey Nafis <snafis@bloom-freeling.com> |
| **Sent:** | Tuesday, July 12, 2016 3:38 PM |
| **To:** | mdk@mkushnerlaw.com; Jonathan Bloom |
| **Cc:** | Rachel Dolnick |
| **Subject:** | RE: Frenkel/Acunto : Service of Notice of Issuance of Subpoena to Citibank |

I placed a call to Citibank and left a message to confirm they would accept emailed subpoena – I have not received a response. I will follow up again and advise.

Thank you,

Stacey Nafis, Paralegal
Bloom & Freeling
Attorneys At Law
2295 NW Corporate Blvd., Suite 117
Boca Raton, Florida 33431
Tel: 561-864-0000
Fax: 561-864-0001

This transmission is intended solely for the recipient who it is addressed to and the information contained in this message is legally privileged and confidential information. If the reader of this message is not the designated recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this message in error, please notify our office by telephone at (561) 864-0000 and destroy all copies of this message and any file attachments. Thank you.

---

**From:** Mark D. Kushner [mailto:mdk@mkushnerlaw.com]
**Sent:** Tuesday, July 12, 2016 3:34 PM
**To:** Jonathan Bloom
**Cc:** Rachel Dolnick; Stacey Nafis
**Subject:** RE: Frenkel/Acunto : Service of Notice of Issuance of Subpoena to Citibank

Do you have an update for me vis-à-vis Citibank accepting the subpoena?

Mark D. Kushner, Esq.
Kushner Law, P.L.
12555 Orange Drive, Suite 211
Davie, Florida 33330
Telephone  954-862-1430
Fax No.:  954-862-1431
Email:  mdk@mkushnerlaw.com
www.mkushnerlaw.com
AV® Preeminent™ Rated by Martindale-Hubbell®
This message be used exclusively by the addressee(s). This message may contain information that is privileged, confidential and exempt from disclosure under applicable law. Unauthorized disclosure or use of this information is strictly prohibited. If you have received this communication in error, please permanently dispose of the original message and notify Mark D. Kushner immediately at 954-862-1430. Thank you.

1

**From:** Jonathan Bloom [mailto:jbloom@bloom-freeling.com]
**Sent:** Friday, July 8, 2016 5:56 PM
**To:** mdk@mkushnerlaw.com
**Cc:** Rachel Dolnick <RDolnick@bloom-freeling.com>; Stacey Nafis <snafis@bloom-freeling.com>
**Subject:** Re: Frenkel/Acunto : Service of Notice of Issuance of Subpoena to Citibank

Stacey please see below and speak with that person at Citi to see if they will accept it via email and let me and Mark know thx

Jonathan Bloom, Esq.
Bloom & Freeling
Attorneys At Law
2295 NW Corporate Blvd.
Suite 117
Boca Raton, Florida 33431
Tel: 561-864-0000
Fax: 561-864-0001
jbloom@bloom-freeling.com

On Jul 8, 2016, at 3:49 PM, Mark D. Kushner <mdk@mkushnerlaw.com> wrote:

> Jonathan:
>
> Attached hereto is the Notice of Issuance with the replacement Citibank Subpoena attached.  Please inquire if Citibank will accept this via e-mail without the need for formal service to avoid the additional costs related to same.
>
> Contact me with any questions.
>
> Mark D. Kushner, Esq.
> Kushner Law, P.L.
> 12555 Orange Drive, Suite 211
> Davie, Florida 33330
> Telephone  954-862-1430
> Fax No.:  954-862-1431
> Email: mdk@mkushnerlaw.com
> www.mkushnerlaw.com
> *AV® Preeminent™ Rated by Martindale-Hubbell®*
> This message be used exclusively by the addressee(s).  This message may contain information that is privileged, confidential and exempt from disclosure under applicable law.  Unauthorized disclosure or use of this information is strictly prohibited.  If you have received this communication in error, please permanently dispose of the original message and notify Mark D. Kushner immediately at 954-862-1430.  Thank you.
>
> <ACUNTO_-_Notice_of_Issuance_of_Subpoena_Duces_Tecum_directed_to_Citibank_2.pdf>

**Stacey Nafis**

| | |
|---|---|
| **From:** | Stacey Nafis <snafis@bloom-freeling.com> |
| **Sent:** | Tuesday, August 02, 2016 2:13 PM |
| **To:** | mdk@mkushnerlaw.com |
| **Cc:** | Jonathan Bloom |
| **Subject:** | Frenkel v Kushner |

Good afternoon Mr. Kushner –

Please be advised that we have been in contact with the representative from Citibank with regard to the above referenced matter and subpoena served upon them July 19, 2016.

We have been advised that the bank statements requested are ready and have been sent to your office today via overnight delivery (UPS tracking #1Z50E7310102425323). All back dated material including but not limited to the signature cards are maintained in a storage facility whereby the records would need to be located, retrieved and copied before they will be available. This process generally takes 30 days minimum. Ms. Perez has advised that she made the request on July 20, 2016 however does not expect to have the documents available until approximately August 19, 2016.

Our office will be following up with Ms. Perez on the 19th to get an updated status of all outstanding documents.

Should you have any questions, please do not hesitate to contact our office.

Thank you,

Stacey Nafis, Paralegal
Bloom & Freeling
Attorneys At Law
2295 NW Corporate Blvd., Suite 117
Boca Raton, Florida 33431
Tel: 561-864-0000
Fax: 561-864-0001

This transmission is intended solely for the recipient who it is addressed to and the information contained in this message is legally privileged and confidential information. If the reader of this message is not the designated recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this message in error, please notify our office by telephone at (561) 864-0000 and destroy all copies of this message and any file attachments. Thank you.

## Stacey Nafis

| | |
|---|---|
| **From:** | Stacey Nafis <snafis@bloom-freeling.com> |
| **Sent:** | Tuesday, June 21, 2016 4:42 PM |
| **To:** | mdk@mkushnerlaw.com |
| **Cc:** | Jonathan Bloom |
| **Subject:** | FW:  Citibank ref# 12.14271 Re: Frenkel v. Acunto |

Good afternoon Mr. Kushner –

Please be advised that we have reached out to Citibank in an effort to retrieve the documents.  Their response can be found below.

Should you have any questions, please do not hesitate to contact our office.

Thank you,

Stacey Nafis, Paralegal
Bloom & Freeling
Attorneys At Law
2295 NW Corporate Blvd., Suite 117
Boca Raton, Florida 33431
Tel: 561-864-0000
Fax: 561-864-0001

This transmission is intended solely for the recipient who it is addressed to and the information contained in this message is legally privileged and confidential information.  If the reader of this message is not the designated recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.  If you have received this message in error, please notify our office by telephone at (561) 864-0000 and destroy all copies of this message and any file attachments. Thank you.

---

**From:** Kennedy, Marilyn [mailto:marilyn.kennedy@citi.com]
**Sent:** Tuesday, June 21, 2016 4:11 PM
**To:** Stacey Nafis
**Subject:** RE: Citibank ref# 12.14271 Re: Frenkel v. Acunto

Stacy,

It has been over a year since records were produced. You can serve a new subpoena requesting records to:

Citibank, N.A.
c/o Legal Services Intake Unit
701 E. 60th St., N.
Mail Code 1251
Sioux Falls, SD  57117
Fax 347-809-6937

Once received your subpoena will be assigned.

Thank you,


**Marilyn Kennedy**
Litigation Support Unit
100 Citibank Dr. Bldg 1 Fl. 2
San Antonio, TX 78245
Ph: 210.677.1879

---

**From:** Stacey Nafis [mailto:snafis@bloom-freeling.com]
**Sent:** Tuesday, June 21, 2016 2:36 PM
**To:** Kennedy, Marilyn [LEGL]
**Subject:** FW: Citibank ref# 12.14271 Re: Frenkel v. Acunto

Good afternoon Ms. Kennedy --

It is my understanding that you were out of the office for some time. I wanted to send a follow up to my request of April 4, 2016 (see below) in an attempt to secure the documents requested. If you would be so kind as to assist, I would greatly appreciate it.

Thank you,

Stacey Nafis, Paralegal
Bloom & Freeling
Attorneys At Law
2295 NW Corporate Blvd., Suite 117
Boca Raton, Florida 33431
Tel: 561-864-0000
Fax: 561-864-0001

This transmission is intended solely for the recipient who it is addressed to and the information contained in this message is legally privileged and confidential information. If the reader of this message is not the designated recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this message in error, please notify our office by telephone at (561) 864-0000 and destroy all copies of this message and any file attachments. Thank you.

---

**From:** Stacey Nafis
**Sent:** Thursday, April 14, 2016 9:54 AM
**To:** 'marilyn.kennedy@citi.com'
**Subject:** FW: Citibank ref# 12.14271 Re: Frenkel v. Acunto

<u>Fourth Request</u> -- please contact our office regarding the below request as soon as possible. Thank you.

---

**From:** Stacey Nafis
**Sent:** Friday, April 08, 2016 3:26 PM
**To:** 'marilyn.kennedy@citi.com'
**Subject:** FW: Citibank ref# 12.14271 Re: Frenkel v. Acunto

Good afternoon Ms. Kennedy --

Please allow this to serve as my **third request** with regard to the above referenced matter. I have been attempting to contact you both via telephone and email to no avail. If you would be so kind as to **contact me upon receipt of this correspondence** so that I may speak with you about this rather urgent matter, I would greatly appreciate it.

Thank you,

Stacey Nafis, Paralegal
Bloom & Freeling
Attorneys At Law
2295 NW Corporate Blvd., Suite 117
Boca Raton, Florida 33431
Tel: 561-864-0000
Fax: 561-864-0001

This transmission is intended solely for the recipient who it is addressed to and the information contained in this message is legally privileged and confidential information. If the reader of this message is not the designated recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this message in error, please notify our office by telephone at (561) 864-0000 and destroy all copies of this message and any file attachments. Thank you.

---

**From:** Stacey Nafis
**Sent:** Wednesday, April 06, 2016 1:45 PM
**To:** 'marilyn.kennedy@citi.com'
**Subject:** FW: Citibank ref# 12.14271 Re: Frenkel v. Acunto

Good afternoon Ms. Kennedy –

Please allow this to serve as a follow up to my email of April 4, 2016 with regard to the above referenced matter. Please advise the status of forwarding the requested documents at your earliest convenience.

Thank you,

Stacey Nafis, Paralegal
Bloom & Freeling
Attorneys At Law
2295 NW Corporate Blvd., Suite 117
Boca Raton, Florida 33431
Tel: 561-864-0000
Fax: 561-864-0001

This transmission is intended solely for the recipient who it is addressed to and the information contained in this message is legally privileged and confidential information. If the reader of this message is not the designated recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this message in error, please notify our office by telephone at (561) 864-0000 and destroy all copies of this message and any file attachments. Thank you.

---

**From:** Stacey Nafis
**Sent:** Monday, April 04, 2016 1:21 PM

**To:** 'marilyn.kennedy@citi.com'
**Subject:** Citibank ref# 12.14271 Re: Frenkel v. Acunto

Good afternoon Ms. Kennedy –

Please allow this to serve as a follow up to my voice mail message left earlier today with regard to the above referenced matter. I am the new litigation paralegal here at Bloom & Freeling. It is my understanding that you had assisted in the compliance of the attached subpoena and records were forwarded to our office on or about February 23, 2015. Unfortunately the paralegal at the time must have misfiled and/or misplaced the documents and it has become my responsibility to secure copies ASAP.

If you would be so kind as to provide our office with duplicate copies of the documents previously provided, it would be greatly appreciated. If necessary, Bloom & Freeling can forward a Fedex slip to cover postage.

Please contact our office upon receipt of this correspondence so that we may discuss this matter further. Thank you in advance for your anticipated cooperation and prompt response.

Best regards,

Stacey Nafis, Paralegal
Bloom & Freeling
Attorneys At Law
2295 NW Corporate Blvd., Suite 117
Boca Raton, Florida 33431
Tel: 561-864-0000
Fax: 561-864-0001


This transmission is intended solely for the recipient who it is addressed to and the information contained in this message is legally privileged and confidential information. If the reader of this message is not the designated recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this message in error, please notify our office by telephone at (561) 864-0000 and destroy all copies of this message and any file attachments. Thank you.

## Stacey Nafis

**From:**        Stacey Nafis <snafis@bloom-freeling.com>
**Sent:**        Tuesday, August 02, 2016 2:07 PM
**To:**        Perez, Leticia2
**Subject:**        RE: Frenkel vs. Acunto LSI-07192016-4020160

Thank you so much for your assistance.  If you could please keep me updated on the signature cards and backup material which remain outstanding, I would greatly appreciate it.

Have a great day!!

Stacey Nafis, Paralegal
Bloom & Freeling
Attorneys At Law
2295 NW Corporate Blvd., Suite 117
Boca Raton, Florida 33431
Tel: 561-864-0000
Fax: 561-864-0001

This transmission is intended solely for the recipient who it is addressed to and the information contained in this message is legally privileged and confidential information.  If the reader of this message is not the designated recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.  If you have received this message in error, please notify our office by telephone at (561) 864-0000 and destroy all copies of this message and any file attachments. Thank you.

**From:** Perez, Leticia2 [mailto:leticia2.perez@citi.com]
**Sent:** Tuesday, August 02, 2016 2:05 PM
**To:** Stacey Nafis
**Subject:** Frenkel vs. Acunto LSI-07192016-4020160

Stacey,

Thank you for taking the time to speak to me.  I've sent the statements to Kushner Law, PL.  They should receive them tomorrow morning.  The UPS tracking number is 1Z50E7310102425323.

Thank You,

*Leticia Perez (Lettie)*

**Legal Litigation Support Unit**
100 Citibank Drive, Bldg. 1, Flr. 2
San Antonio, Texas 78245
Phone: (210) 677-6978
Fax: (210) 468-0202

